**UNITED STATES v. 44.00 ACRES OF LAND, MORE OR LESS, IN TOWN OF GREECE, MONROE COUNTY, N. Y. et al.**

Civ. A. No. 5099.

United States District Court
W. D. New York.

Jan. 28, 1953.

George L. Grobe, U. S. Atty., Buffalo, N. Y., for plaintiff; R. Norman Kirchgraber, Asst. U. S. Atty., Buffalo, N. Y. and Adolph H. Huttar, Sp. Atty., Department of Justice, Buffalo, N. Y., of counsel.

Frederick Wiedman, Rochester, N. Y., and Gallop, Climenko & Gould, New York

City, for defendant John H. Odenbach; Jesse Climenko and Arthur S. Friedman, New York City, of counsel.

BURKE, District Judge.

This is a motion by the defendant Odenbach to vacate and set aside the declaration of taking filed herein on June 11, 1952 on the ground that the estimate of just compensation of $300,000 contained therein was not determined and arrived at in good faith, and to vacate and set aside the ex parte judgment entered thereon dated June 16, 1952.

The plaintiff commenced proceedings for condemnation of the property described in the declaration of taking on December 27, 1951 by filing with the Clerk of this Court a summons and complaint. On December 29, 1951 an order of immediate possession was made and entered by this Court. On February 13, 1952 an answer was filed on behalf of the defendant Odenbach. Prior to the institution of proceedings for condemnation, the plaintiff had been in possession of substantial portions of the property involved since on or about July 11, 1951 under a written right of entry granted to the United States by Odenbach Holding Corporation from whom the defendant Odenbach acquired title to the property. The right of entry was executed on July 11, 1951. It recited negotiations between the parties for the purchase of the property involved and provided for 90 days subsequent to July 11, 1951 as the period of its duration. On October 10, 1951 Odenbach Holding Corporation conveyed title of the property to John H. Odenbach. Negotiations for the purchase of the property were carried on between representatives of the owner and representatives of the Government subsequent to July 11, 1951. On October 11, 1951, when the right of entry expired, no agreement had been reached for the purchase of the property. Further negotiations were had regarding a supplemental right of entry, but no supplemental right of entry was ever executed, although the Government continued in possession.

Subsequent to the commencement of condemnation proceedings, there were many items of property used or usable in connection with the property which the Government desired to appropriate. Accordingly on March 31, 1952, the attorneys for the Government and for the owner entered into a written stipulation providing that 116 separately numbered items of property consisting of railroad tracks, electrical equipment, storage tanks, loading cranes and miscellaneous equipment should be deemed part of the real estate to be considered in the valuation in the condemnation proceedings. On June 16, 1952, after the judgment of this Court had been entered on the declaration of taking, the defendant Odenbach filed a motion for an order for the distribution and payment of the sum of $300,000 deposited with the Court together with the filing of the declaration. The Government filed a cross-motion for the release of the sum on deposit for the purpose of paying taxes, for the purpose of paying a mortgage held by Reconstruction Finance Corporation amounting to $129,500 and accumulated interest, and for the purpose of paying a judgment in favor of the United States in the sum of $168,891.53 against Odenbach Shipbuilding Corp. entered November 30, 1951 in an action in this Court. The Government claimed on that motion that Odenbach Shipbuilding Corp. and Odenbach Holding Corp. were mere alter egos of John H. Odenbach and that the judgment against Odenbach Shipbuilding Corp. should be determined to be a valid and subsisting lien against the premises in condemnation or in the alternative that the amount of the judgment should be set off against the sum on deposit with the Court and against any further sum that might be allowed for just compensation for the taking by the United States. A hearing on the motions was had on June 23, 1952. Before a determination could be had the defendant Odenbach filed the present motion to set aside the declaration of taking and the judgment entered thereon. He incorporated in that motion a motion for an order permitting the withdrawal of his notice of motion and petition for the distribution and payment of the sum deposited with the Court together with the declaration of taking.

On July 24, 1952 the plaintiff filed an answer and return to the motion to set aside the declaration of taking and the judgment entered thereon, supported by an affidavit of R. Norman Kirchgraber, Assistant United States Attorney. In its answer and return the plaintiff opposed the motion on the grounds: (1) that this Court is without discretion or jurisdiction to set aside the declaration of taking; (2) that the allegations set forth in the notice of motion and supporting affidavits are insufficient to warrant the setting aside of the judgment entered on the declaration of taking; (3) that upon the merits neither the declaration nor the judgment should be set aside.

On September 12, 1952, on the occasion of a hearing on a motion by the Government to vacate or limit a notice of the defendant Odenbach to take depositions of witnesses, the Court inquired whether the Government still contended that the Court had no power to determine the question of good faith in the filing of the declaration of taking. The reason for adverting to that question was that it was not clear whether the Government persisted in questioning the Court's authority to determine the question of good faith in the filing of the declaration of taking, even though that had been formally stated as a ground for objection in the Government's answer and return to the notice of motion. A brief had been filed by the Government after the original hearing on the motion to set aside the declaration of taking and the judgment entered thereon, but the position of the Government on the question had not been made clear. In the discussion in open court on September 12, 1952 between the Court and the Government's representative and in the presence of opposing counsel, it seemed to be the position of the Government that the question of good faith in filing the declaration of taking was properly open for determination by the Court. It was then decided in open court that, since the question of good faith was properly open for determination, the most satisfactory way to resolve it was by taking testimony bearing on the question of good faith rather than on the scant affidavits that had been filed in support of and in opposition to the motion. Accordingly a hearing was held on December 9, 1952 for the taking of evidence directed to the question whether the estimate of just compensation contained in the declaration of taking had been made in good faith. The Government was represented by counsel at the hearing.

Prior to the hearing and on December 4, 1952 the Government, without applying to the Court for leave to do so, filed an amended declaration of taking reciting the filing of a declaration of taking on May 26, 1952 and the simultaneous deposit in the registry of the Court of the sum of $300,-000 (the original declaration of taking had been filed not on May 26, 1952 but on June 11, 1952, and the deposit of $300,000 had been made simultaneously therewith). The amended declaration also contained the following:

"Whereas, the amount deposited in the registry of the court at the time of filing of the declaration of taking was intended to cover the value of the real property only, and it has been administratively determined that it is necessary and advantageous to the interests of the United States to amend the said declaration of taking on file in the above-entitled cause by increasing the amount deposited to cover value of certain properties-included therein.

"Now, Therefore, I, Edwin V. Huggins, Assistant Secretary of the United States Air Force, acting pursuant to the powers and authorities recited in the above-mentioned petition and declaration of taking, filed in the above-entitled cause, in order to deposit additional funds into the registry of the court, and in order to facilitate the adjudication of the interests of the parties involved, do hereby amend said declaration of taking by increasing the amount of estimated compensation for the land taken to be $500,000.

"It is intended that the above-mentioned estimated compensation shall supersede and take the place of the compensation set forth in Schedule 'A' of the declaration of taking executed

by the Under Secretary of the Air Force on May 21, 1952, but that the said declaration of taking is not changed and shall not be deemed to be changed in any other particular than is herein expressly set forth."

Simultaneous with the filing of the amended declaration of taking on December 4, 1952, the plaintiff deposited with the registry of this court on additional sum of $200,000.

The first question for determination is the court's power to inquire into the good faith of the acquiring authority regarding the statement of estimated just compensation contained in the declaration of taking. The statute, 40 U.S.C.A. §§ 258a–258e, providing for the acquiring by the Government of immediate title to lands to be condemned by the filing of a declaration of taking and the deposit in court of the amount of estimated just compensation, is supplemental to existing legislation regarding condemnation proceedings. "The purpose of the statute is twofold. First, to give the Government immediate possession of the property and to relieve it of the burden of interest accruing on the sum deposited from the date of taking to the date of judgment in the eminent domain proceeding. Secondly, to give the former owner, if his title is clear, immediate cash compensation to the extent of the Government's estimate of the value of the property." U. S. v. Miller, 317 U.S. 369, 381, 63 S.Ct. 276, 283, 87 L.Ed. 336. The statute provides that the declaration of taking shall contain or have annexed among other things "A statement of the sum of money estimated by said acquiring authority to be just compensation for the land taken."

It is fundamental that the courts may require compliance with the statute when the Government elects to resort to the statutory method of acquiring title. If an acquiring authority should file a declaration of taking containing a statement of estimated just compensation on its face plainly inadequate, such as a mere nominal sum for property described in the declaration, and should deposit such nominal sum

in court, the owner would not be without a remedy to review by judicial inquiry such an arbitrary act of an acquiring authority amounting to non-compliance with the statute. In such an extreme case it would be readily apparent that the purpose of the statute was being thwarted by arbitrary governmental action, by mere simulated or token compliance with the statute. It is true that no such extreme case is involved here, but the defendant nevertheless has charged lack of good faith in the Government's estimate of just compensation and has supported the charge by affidavit making a prima facie showing of non-compliance with the statute. In Catlin v. United States, 324 U.S 229, 65 S.Ct. 631, 89 L.Ed. 911, the Court recognized the owner's right to challenge the validity of a taking for departure from statutory limits. There was involved in that case the question of the owner's right to question the validity of a taking as not being for the purpose authorized by statute. In United States v. Meyer, 7 Cir., 113 F.2d 387, 392; certiorari denied 311 U.S. 706, 61 S.Ct. 174, 85 L. Ed. 459, the Court by plain implication recognized the judicial power to review an administrative decision regarding the necessity of a taking. I understand the decision of the Court of Appeals for the Second Circuit in United States v. State of New York, 160 F.2d 479, certiorari denied 331 U.S. 832, 67 S.Ct. 1512, 91 L.Ed. 1846, to mean that there may be judicial review of the question whether public officials have acted arbitrarily in determining what is "public use" in condemnation proceedings. There can be no doubt that the court may not substitute its judgment for what is just compensation for the administrative determination of the acquiring authority. That however, does not mean that the court is without power to review an administrative determination involving the statutory requirement under the declaration of taking statute of a statement of estimated just compensation, where the good faith of the acquiring authority is unequivocally challenged and where the challenge is supported by a prima facie showing of lack of good faith and non-compliance with the statute.

■ On the evidence produced at the hearing, I make the following findings of fact:

1. In December, 1951 the Government's written authority, under the right of entry to occupy the premises involved in this proceeding, had expired. Negotiations for the purchase of the property by the Government had not resulted in an agreement to purchase. On December 15, 1951 Odenbach sent a telegram to the New York District Office of the United States Corps of Engineers, whose representatives had been negotiating for the purchase of the property, demanding possession of the property and the removal therefrom of the A. O. Smith Company, whom the Government had put in possession.

2. Odenbach immediately received a communication in reply from a representative of the New York District office of the United States Corps of Engineers asking Odenbach to withhold taking any steps to regain possession of the property pending the preparation of papers in condemnation proceedings. The representative of the District Engineer's office stated that a condemnation proceeding would be commenced and a deposit made in connection therewith of $500,000, which would be available to Odenbach.

3. Representatives of the New York District Office of the United States Corps of Engineers recommended the institution of the condemnation proceeding to the United States Secretary of the Air Force and recommended that a deposit be made in connection therewith of $500,000.

4. A declaration of taking was executed by the Assistant Secretary of the Air Force on December 21, 1951. Such declaration contained a statement that the estimated just compensation of the premises described therein was $500,000. A certified copy of the declaration was forwarded by the office of the Secretary of the Air Force to the New York District Engineer's office with a request that that office procure a check for $500,000 for deposit with the declaration of taking. The check was obtained and forwarded to the United States Attorney at Buffalo, N. Y., by letter dated January 11, 1952. The letter of transmittal specifically recited that the enclosed check for $500,000 was for deposit in the registry of the Court, together with the declaration of taking.

5. The declaration of December 21, 1951 was not filed with the Court nor was the check for $500,000 deposited in the registry of the Court.

The Government presented no evidence. An adjournment was taken to allow the Government to determine whether it wished to present evidence. The Court has been informed by the representative of the United States Attorney's office in charge of the proceeding that the matter was to be considered submitted for decision without further evidence and without further argument.

I can conceive of many possible reasons why the acquiring authority in good faith might have later determined that estimated just compensation was less than $500,000, as stated in the declaration of December 21, 1951. In the state of the record, however, leaving the reason for the change from $500,000 to $300,000 unexplained in the face of the unequivocal charge of bad faith in reducing the estimate of just compensation to $300,000 and in the face of prima facie proof amply sufficient to sustain the charge of bad faith, I am constrained to find that the statement of estimated just compensation in the declaration of taking dated May 21, 1952 was arbitrary and was not made in good faith, and that the declaration and deposit did not comply with the requirements of the statute.

The declaration of taking dated May 21, 1952 and filed with this Court on June 11, 1952 and the judgment of this Court entered thereon dated June 16, 1952 should be vacated and set aside. The defendant may have an order permitting the withdrawal of his motion for the distribution of the sum of $300,000 deposited with the declaration.