FRUGÉ, Judge.
The heirs of B. F. Rutherford, plaintiffs herein, seek to recover from Phillips Petroleum Company, Kerr-McGee Oil Industries, Inc., and J. Ray McDermott & Company, Inc., defendants, certain additional rentals under a surface lease granted hy their ancestor in title, B. R. Rutherford to Phillips Petroleum Company on June 28, 1952. Judgment in the lower court was rendered in favor of the defendants and plaintiffs have appealed.
We quote in extenso from the written reasons assigned by the trial judge, since they succinctly and accurately set out and summarized the essential facts of this case, as follows:
“The lease affects Section 21, Township 15 South, Range 6 West, and other contiguous lands adjacent to the Gulf of Mexico in Cameron Parish, Louisiana, which have since been inherited by the plaintiffs from the lessor. It provides for a cash consideration of $15,000.00 for a primary term of one year, and that it may be extended from year to year up to fifty years upon payment of annual rentals. The purposes of the lease were to permit the lessee to directionally drill oil and gas wells from surface locations on the lessor’s land to the bed of the Gulf of Mexico, and to use the leased premises to obtain, handle and transport the production derived from such wells, and also to use the leased premises to handle and transport production obtained from offshore wells having surface locations in the Gulf of Mexico.
“The rental provisions in the lease provide for the annual payment of a rental of $2,500.00, beginning with its first anniversary date, which covers the drilling of one directional well, and for $2,500.00 per annum for each additional directional well drilled from the plaintiffs’ land, all payable in advance of the commencement of operations. In addition there is a provision for the payment of $1,250.00 per year per offshore well in order for the lessee to enjoy the rights and privileges granted therein with respect to the handling, storage and transportation on the leased premises of production obtained from wells having surface locations in the Gulf of Mexico.
“When the surface lease was'executed Phillips Petroleum Company, the lessee, and Kerr-McGee Oil Industries, Inc., owned in equal proportions two mineral leases acquired from the State of Louisiana, one being State Lease No. 1170 covering a portion of the Gulf of Mexico immediately south of plaintiffs’ lands, and the other being State Lease No. 1123 covering a portion of the bed of the Gulf in part adjacent to State Lease No. 1170 on the west. By agreement Phillips was then the operator of the two state leases.
/ “Phillips subsequently directionally drilled two wells in the bed of the Gulf of Mexico from surface locations on plaintiffs’ lands, and drilled a third well from a surface location in the Gulf. All of these wells have continued to produce up to the present time. Phillips Petroleum Company has paid plaintiffs, as rental under the surface lease, $5,000.00 annually for the two directional wells and $1,250.00 each year for the offshore well.
“Through subsequent contracts J. Ray McDermott & Company, Inc. acquired an interest in State Lease No. 1123 and was designated as the oper- *520 atop' thereof. 'In:'1958, 1959-’and 1960 it drilled’ ther’eo-ni'offshore 'Wells, A-l, B-l’and íC^-'ly'.respfectively, -and-'these wells -have■ produced gas arid-distillate dp -to' the’ present • time. This' ‘produc-tibn- • is ■ 'own'ed- > -by- ■ the- ■■ de-f elidants in different proportions. ■ .ó A;
“Under a, gas.. purchase contract dated as,of November 14,.. 1958, the defendants agreed to sell Hope Natural Gas Compapy the gas. produced frpm Lease No. U23, (but reserved tjie right to (process tjie gas and extract, therefrom ( certain, components,. not desired by the purchaser.' By act dated as ,of November 1, 1958, Hope contracted with Texas Gas Transmission Cprporation for transportation of said gas through a,,,pipeline,.tp,,he ¡poiistr.pcted by TpxaSnG^ The, ,defendants,;Hope and, Texas Gas,, then executed a supple^ rpent to.th.e ga,s .gupchaje contrast, ,.al.s,o dated as-, of Nqyember. 14, ,L958j -under which it was agreqd,¡that, sine,e. it was impfacti.qa.1 to, .process the gas ;,and- .extract tha.heayipr hydrocarbons! ¡at the drilling platforms in the,Gulf, ,qf-;-Mpxi-, co, . the. , .defendants > could ,withdraw Hope’s gas,fr-qin ¡the pipeline,,at ,a mutually, .agreeable, location on ¡the, shore, extract .the.jqoiRponents.therefrpm .and return the gag,to Texas, Qas’. pipeline. In addition, Texas Gas agreed to trans-pprt-toi ishpre without-.cost to.'defendants 'the, liquids thatjiwere; separated frpm..the gag by. s.eparatpr.s -in,,‘¡the Gulf p.f ¡Mexico,¡prior.to.ideliyery of ¡s-uch;g<as to Hope..,,. ... . ,. r,,n,"¡
‘.t'Under'- thé contracts "’between:'defendants, -Hope and TidxaS' GaspTit-l'e to, the -gas- purchased-passeé'’to Hope at; the i production ■ platfof'ms ton the lease,- ¡However, distilláté'is separated from the-gas prior to said-delivery,- and title thereto remains in the defendants. Defendants have not yet constructed the necessary -facilities’ on’-the"shore to extráct the components’ frbni the gasj and asr- a : consequence Hope'Téceives title1 to '¿aid component's as 'well'as-the ’■‘gas at'the-point "of-delivery at the production platforms’'in the'Guíf. ’ •
“The defendants’ distillate could be • transported from the wells to the shore either by'reinjecting same into the-gas pipeline or in a separate liquid line. However, TéXas Gas elected to'transport the distillate separately; and1 constructed a 3 inch line for this purpose and a 12 inch line to transport the gas. Both of these pipelines run from the ‘‘thfeé wells'on'’State Lease No. 1Í23 “add across Section 21-15-6 to'a point " ''north'1'of’’the ’plaintiffs’ property! In '-’addition, Te!xás: Gas Transmission''Cor-' ’ 'pofátioh has'laid’ dhothef' 12' ‘inch' arid'' ’' dríothér á’ihch line ácfoss thé' jilainti'ffs’' ’■'property through Which "it transports gas:l and "distillate, respectively, from' "''other leases in'the’Gulf of’Ktexicd owh-ed‘by"othéf part'i'és. "’ ‘
“All of these pipelines were laid by --■Texas Gas on a'n; easement which- it -'•acquired-ifrom the plaintiffs- through-b'expropriation.'''That-suit was filed in-' • this ,'cóurt - on August'*20;' 1959, -and-judgment was rendered on September 22, 1959,, granting Texas Gas Transmission' fCorporatioii a. right-of-way and easement 150 feet in width, running from the north fíne .pf Section 21-Í5-6 almost due south, to the shore line'of the Gulf .of Mexico, for-the , -.'r:'-.-,! i -• ,,i¡ . ■ /• : , ' purpose of constructing thereon pipelines for the transportation of' natural gas , and all by-products., The plaintiffs were awarded, ¿4,728.00 as just f.'i i j. • compensatiqn, for1 this servitude. .
' ’“The^'plkihtiffs here 'contend 'that, despite’ thé'awafd ‘Ófsthe 'servitude to Té'xas,;Ga's in' th'e expropriation proceedings, thé defendants, through Hopé Natlifal'Gas'Coinpany and Texas Gas Tra'fisfnrssion/are' rising the premises coveted ‘by the' surface léase b'étwéén B.'T;;!E:utheffofd khd Phillips of June 28,'1952j'for thé tránspbrtation of their distillate'from off-shore wells A-l, B-l and C-l on State Lease‘No. 1123, and *521 therefore plaintiffs are entitled to. the, annual rental of $1,250.00 for..each-such well as provided in said surface lease. * * *” (Tr. 289-292)' ;
The relevant provisions of the-Rutherford lease that require consideration by this Court in the disposition of the case at bar provide:
“As long as the basic portion of this lease is kept in force by any method herein provided, Second Party shall have the right, privilege and option to use the leased premises and all of the right?,, privileges, - easements, -, servi-tudes, installations, machinery, pipe lines, tanks, pits, roads, injection wells, and all other"’equipment, on the leased premises, for the ‘ handling, storage, treatment transportation, and disposal of all of .the oil, gas or other, minerals produced by Second Party from any well or wells with off shore surface locations in the Gülf of Mexico, whether now being drilled, or hetfaften drilled, and for storage and disposal of salt water produced therefrom; and' shall ■ also enj'oy the right; to: constructmain-tain, operate and use- any • additional-equipment, machinery, tanks, pits/ pipe- ' - lineSj and other installations and.-facili-' ties for that purpose. • - • •
* * * * *
In.qrder to; enjoy such/-rights- and .privileges ,as totproduction from':'any:-:¡ off .shore .well,.. Second Party-shall pay or tender in advance of . the uses .of the. ■ premises to First .Party or to the credit. of First Party - in .the .depository bank hereinabove named,,-in the same man-., ner as is provided for the payment, of the rentals set forth'in this'léase, the amount and sum, of - - $1250.00,s ..which payment shall entitle Second Party to the rights herein granted for one off shore well for one year'■■from such'payment. .-And Second Party shall.have the same rights for the full -period- of- 1. .one year,,from the date of payment¡a-s ,- ,to, any additional ioff shore well ,or-wells....; upon., making a. similar payment-m-advance- of. -the plise''.of. the-premises; fbr¡-each. such; well.--'. *. .¡-‡. -(Trt 49-50.)
Learned' counsel' for the plalhtiffs' contends :th'at nothing is said’ in the .'contract about "*ivho owns 'the pipeline being used, how the'owner of the pipeline acquired the fight to1 lay' the' line on the’ premises, who built-the line/of who''operated or*'maintains it." Further mor é,"it is árgü'éd fh'át'áiñce" the Téxás 'Gas! expropriation cóül’d fto't "divest from'Phillips the tight to use pipelines on the prémisfes, Phillips- still' has this right and therefore" Rutherford' mtist necessarily still have the right to collect the rent. ' With these Contentions' !we caíinót: agree.
 A "condemnation-.1proceeding--is -a proceeding- in-«rem: - -Ifc-'is not a-talcing of rights of persons- in the.ordinary- sense' but an appropriation of-the land or-property itself. When the property is conveyed by judgmént,- 'dll''previous existing 'estates or interests iií-thé lánd á’re eitmgüishéd. A. W. Duckett & Co., Inc. v. United States, 266 U.S. 149, 45 S.Ct. 38, 69 L.Ed. 216; United States v. Dunnington, 146 U.S. 338, 13 S.Ct. 79, 36 L.Ed 996; United States v. Certain Lands in Borough of Brooklyn, 2 Cir., 129 F.2d 577. Accordingly’ it seems clear that Phillips’ rights under the Rutherford lease could-not extend to -the'easement and right-of-way ¡conveyed- to ¡Texas «Gas by virtue-of-the1'expropriation.
I-t.is ^elementary tinder put jurisprudence that.jin. the, construction,.of, contracts'a coqrt must, ij;, possible, .ascertain and give effect to, the mutual intention of the parties. LSA-C.C. art. 1950; Cooley v. Meridian Lumber Co., 195 La. 631, 197 So. 255; Hunt Trust v. Crowell Land & Mineral Corp., 210 La. 945, 28 So.2d 669. Also welli settled,¡j? ,.th.e ripe, tpat iii con-^truing' the.te.rrns of an agreement, the, fact that inforrned and, experienced, person? do not¡; .customarily ;pjnd themselves to tmjus.t and unreasonable obligations must be considered. Oil Field Supply & Scrap Material Co. v. Gifford Hill & Co., 204 La. 929, *522 16 So.2d 483. Under the provisions of the lease in question Phillips Petroleum Company was granted the right to use pipelines which ran across the lands of the plaintiff upon its payment of certain rentals. Certainly it must be presumed that the parties intended that the right of use be in existence at the time use was desired by the defendants. Indeed we find it inconceivable that Phillips would have agreed to pay a considerable sum of money for a right which plaintiffs’ ancestor in title could not possibly convey. As previously concluded the easement and right-of-way which Texas Gas obtained by expropriation was not burdened by any rights conveyed by the Rutherford-Phillips lease. Thus if we adopt the contention set forth by the plaintiffs herein we must conclude that the defendant agreed to pay valuable consideration for a right that does not exist, since it was extinguished by the expropriation judgment.
In addition, the lease provides for the payment of rent upon the exercise by Phillips of the right to use pipelines on the plaintiffs’ property. In the case at bar Hope Natural Gas Company contracted with Texas Gas for the transportation of the production from the defendants’ wells ;as well as the production of others from other wells in the area. Texas Gas is acting in its own behalf in its business as a common carrier in transporting Hope’s gas and the defendants’ distillate through its pipelines located on its own easement and right-of-way on the plaintiffs’ property. All of the products are being transported by it for the single consideration paid by Hope Natural Gas Company. Thus the defendants are not using any pipelines located on the plaintiffs’ property.
1 We therefore conclude that the defendants are not using pipelines located on the plaintiffs’ property, within the meaning of the terms of the surface lease and therefore are not liable for any rent in this regard.
For the reasons assigned, it is ordered that the judgment appealed from is affirmed; the plaintiffs to pay all costs of this appeal.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.